J-S07026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :  PENNSYLVANIA
                                    :
             v.                      :
                                    :
                                    :
DAMION GLENROY DAVIS         :
                                    :
          Appellant        :  No. 113 MDA 2018

Appeal from the Judgment of Sentence Entered December 19, 2017
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001257-2017

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: MAY 24, 2019**

Damion Glenroy Davis appeals from the judgment of sentence entered after a jury found him guilty of resisting arrest and the trial court convicted him of the summary offense of public drunkenness.[1] Davis challenges the sufficiency of the evidence and the jury instruction on resisting arrest. We affirm.

The facts giving rise to Davis's convictions are as follows. Officer Matthew Kennedy testified that while in a patrol car in Carlisle with Officer Timothy Mayer, Officer Kennedy heard "screaming come from an area around the courthouse." N.T., Trial, 11/3/17, at 38. It was approximately 1:47 a.m. *Id.* at 57. He observed Davis standing near the courthouse steps. *Id.* As they

---

*   Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5104 and 5505, respectively.

drove closer to investigate, Officer Kennedy continued to hear "angry" yelling but could not hear the contents of what was being said. *Id.* at 39. When he approached Davis, he heard Davis screaming into his cell phone, "You fucking bitch. You have my money. Give me my money or I'm going to shoot up your house." *Id.* at 40. Davis walked away and went into the foyer area of an apartment building. *Id.* at 43-46. The officers followed Davis in their patrol car and saw him "beating on the door inside and yelling." *Id.* at 46. Both officers then got out of their vehicle and began to approach Davis. *Id.* Davis came out of the building yelling and screaming, and "at this point [the officers were] getting close enough that [Officer Kennedy] . . . could smell the odor of alcohol very strong." *Id.* When Officer Kennedy smelled this strong odor of alcohol, Davis was "back out on the public street." *Id.*

At that point, Officer Kennedy told Davis that he was under arrest for public drunkenness. *Id.* When Officer Kennedy proceeded to arrest Davis, a struggle ensued:

> I told him he was under arrest. And I went to grab ahold of him. He starts to pull out of my grasp. Officer Mayer also attempts to get ahold. He started twisting and Officer Mayer got ahold of his right arm – correction, I mean, his left arm. He was getting ahold of him and he's twisting and trying to pull away, yelling: "I'm going back in." No, you're under arrest.

*Id.* at 47.

Officer Kennedy warned Davis that he would use his Taser on Davis if he did not stop resisting. However, Officer Kennedy did not deploy his Taser because he "didn't have a good shot," as Officer Mayer and Davis were

struggling with each other, and there was a risk he would tase them both. *Id.* at 50. Officer Mayer then called for backup and two other officers arrived. *Id.* at 53, 54. The four officers then placed Davis in two sets of handcuffs. *Id.* at 55. Officer Kennedy testified that following the arrest, his hand was sore and he had pain in his knee. *Id.* at 66. Officer Mayer testified that he had a cut on his finger. *Id.* at 69. Additionally, one of the backup officers testified that the leg pocket of Officer Kennedy's uniform was torn. *Id.* at 95, 97.

Following the convictions, the trial court sentenced Davis to one day to 23 months' imprisonment. Davis filed a post-sentence motion challenging the sufficiency of the evidence. The trial court denied the motion and this timely appeal followed.

Davis asks us to review the following issues on appeal:

1. Whether the evidence was insufficient to sustain the verdicts of guilt?

2. Whether the trial court erred in instructing the jury on the charge of resisting arrest?

Davis's Br. at 4 (suggested answers omitted).

A challenge to the sufficiency of the evidence requires us to view the facts in the light most favorable to the Commonwealth as verdict winner, with all reasonable inferences in the Commonwealth's favor. *Commonwealth v. Sweitzer*, 177 A.3d 253, 257 (Pa.Super. 2017). "[O]ur standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Edwards*, 177 A.3d 963, 969 (Pa.Super. 2018) (citing *Commonwealth v. Johnson*, 160 A.3d 127, 136 (Pa. 2017)).

First, Davis claims that the evidence was insufficient to sustain the resisting arrest conviction because the underlying arrest for public drunkenness was unlawful. Davis maintains that the Commonwealth failed to prove that "[he] was in a public place manifestly under the influence of alcohol to a degree that he was a danger to himself or other persons or property or annoy any people in the vicinity." Davis's Br. at 12. He claims that "any observations the officers made of [him] were while he was at his own residence, not a public place." *Id.* at 13.

Second, Davis contends that he merely "moved his arms to prevent being handcuffed and did nothing physical to the officers." *Id.* at 18. He argues that the Commonwealth therefore failed to "prove that he created a substantial risk of injury or that substantial force was required to overcome any resistance." *Id.* at 8.

A person commits the crime of resisting arrest "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. There is no requirement of serious bodily injury. *Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa.Super. 1989). Rather, if the Commonwealth has proven that the "arrestee's actions created a substantial risk of bodily injury to the arresting officer," it has established the need to use substantial force. *Id.* The Commonwealth must also prove that the underlying arrest was lawful, which

it may do by showing that the police officer had probable cause to arrest. ***Commonwealth v. Jackson***, 924 A.2d 618, 620 (Pa. 2007).

We first address the lawfulness of Davis's underlying arrest for public drunkenness. Public drunkenness occurs when a person "appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in . . . The Controlled Substance, Drug, Device and Cosmetic Act, to the degree that he *may* endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S.A. § 5505 (emphasis added). "Public" refers to "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are, . . . apartment houses, . . ., any neighborhood, or any premises which are open to the public." 18 Pa.C.S.A. § 5503(c); ***see also Commonwealth v. Meyer***, 431 A.2d 287, 289 (Pa.Super. 1981) (relying on definition of "public" as defined in Section 5503(c) for purposes of public drunkenness statute because statute does not define the term "public").

Davis's underlying arrest was lawful. As the trial court explained, Davis "engaged in loud and vulgar confrontation with the police at approximately 2:00 a.m., even after being told to be quiet several times." Trial Court Opinion ("TCO"), filed 4/20/18, at 15. Additionally, officers noted that Davis "smelled strongly of alcohol" which led them to believe that he was intoxicated. ***Id.*** The evidence also supports that Davis was in "public" when he was on the steps of the courthouse yelling and when he left the apartment building to scream at the officers. The strong odor of alcohol, plus Davis's behavior toward

officers, his screaming on the courthouse steps, and his threatening cell phone conversation in public, gave police sufficient probable cause to believe that Davis was intoxicated and that his behavior at the very least was annoying to others nearby.

We now address Davis's claim that there was no evidence that he created a substantial risk of injury to the officers or that substantial force was necessary. Officer Kennedy attempted to use a Taser to place Davis under arrest, and ultimately had to summon two additional officers – for a total of four – to effectuate the arrest. Additionally, Officer Mayer had to hold on to Davis's handcuff so it would not be used as a weapon. *See* N.T. at 23. While the officers did not sustain severe injuries, "Officer Kennedy got a 'sore hand' and pain in his knee . . . [and] Officer Mayer cut his finger at some point during the incident." TCO at 6-7. We agree with the trial court that "[Davis's] conduct in squirming, wrestling, pushing and trying to break free from custody caused multiple officers to sustain scratches, soreness, torn clothing, and exhaustion in order to finally subdue him." *Id.* at 15. The evidence was sufficient to establish that substantial force was necessary and that Davis created substantial risk of injury to officers. *See Commonwealth v. McDonald*, 17 A.3d 1282, 1286 (Pa.Super. 2011) (concluding evidence was sufficient for resisting arrest where multiple officers needed to use a Taser to arrest defendant).

Next, Davis maintains that the trial court erred when it instructed the jury that "[p]ublic drunkenness is a crime which police have the authority to arrest someone that commits that crime." Davis's Br. at 26-27. He argues that this was in error because "the jury was not deciding the summary charge of public drunkenness" and "it placed substantial and undue emphasis on public drunkenness and misled the jury into believing that the trial court had already concluded that the arrest was lawful on the basis of public drunkenness rather than allowing the jury to decide whether the arrest was lawful." *Id.* at 27.

We do not examine a challenged instruction in isolation. Rather, we look at the jury instructions as a whole to determine whether they accurately informed the jury of the relevant legal principles. *Commonwealth v. Kane*, 188 A.3d 1217, 1231 (Pa.Super. 2018), *appeal denied*, 197 A.3d 1180 (Pa. 2018). "[E]ven if an instruction is erroneous, relief is due only when the error is prejudicial." *Commonwealth v. Veon*, 150 A.3d 435, 457 (Pa. 2016).

> The trial court gave the following jury instruction for resisting arrest:
>
> The first charge is resisting arrest or other law enforcement. [Davis] has been charged in Count 1 with resisting arrest or other law enforcement. To find [Davis] guilty of this offense, you must find that all of the following elements have been proven beyond a reasonable doubt.
>
> First, that [Davis] created a substantial risk of bodily injury, regardless of whether any actual injury occurred to a police officer or resisted by means justifying or requiring substantial force to overcome the resistance. And secondly, that [Davis] did so with the intent of preventing the police officer from effecting a lawful arrest or discharging a duty.

> What I mean by lawful arrest: A lawful arrest is the taking of a person into legal custody either under a valid warrant or on probable cause that person has committed a crime. Public drunkenness is a crime for which police have the authority to arrest someone that commits that crime.

N.T., at 42.

The instruction was proper. The court committed no error in telling the jury that the law allows the police to arrest someone for public drunkenness. It did not commit the mistake of instructing the jury that an arrest in fact occurred. *See Commonwealth v. Alford*, 467 A.2d 1351, 1353 (Pa.Super. 1983) (concluding trial court abused discretion in instructing jury that "officers were in fact making or attempting a lawful arrest").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2019